# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

RICHARD CAIRES,

    Plaintiff,

    v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

    Defendant.

Civil Action No. 17-957 (JEB)

## MEMORANDUM OPINION

For *pro se* Plaintiff Richard Caires, it might feel like Groundhog Day. Caires, who has been trying to avoid repayment of a $5.5 million loan he obtained from Washington Mutual Bank in 2005, has filed, reworked, and re-filed several markedly similar lawsuits in four different courts over the past ten years. Each time he loses – whether on the merits or because of a jurisdictional bar – he tries again. This time around, Plaintiff has filed suit against the Federal Deposit Insurance Corporation seeking a declaratory judgment on the current ownership of the loan and damages for a bevy of alleged injuries. The FDIC, in response, has now filed a Motion to Dismiss. Unfortunately for Plaintiff, the Court finds that he is once again barred by jurisdictional limitations; for the purposes of this suit, his Day is now finally over.

## I. Background

Like many others on the eve of the financial crisis, Caires took a gamble to purchase, remodel, and hopefully sell an "exclusive property . . . at the top of the market." ECF No. 1 (Complaint), ¶¶ 12-13. Unfortunately for him, he defaulted on his loan, which has resulted in

1

over eight years of litigation. The story begins in 2006 with Caires's purchase of a $1.4 million house in Greenwich, Connecticut, financed primarily by a $1 million loan from WaMu. See Compl., Exh. L (2016 Proof of Claim), ¶ 3.10. In August 2007, he obtained an additional $5.5 million construction loan from WaMu, which he used, in part, to pay off his initial acquisition loan. Id., ¶ 3.20.

While Caires was going about the business of remodeling his property, the financial crisis brought WaMu to its knees. On September 25, 2008, the Office of Thrift Supervision declared the Bank insolvent and appointed the FDIC as its Receiver. See ECF No. 7-2 (Declaration of Donald G. Grieser), ¶ 3. That same day, the FDIC-Receiver entered into a Purchase and Assumption Agreement with JPMorgan Chase Bank for the sale of all the assets and certain liabilities of WaMu. Id., ¶ 5. The FDIC published a Notice to Creditors and Depositors of WaMu – online and in three national newspapers – informing them that all administrative claims against the Bank had to be submitted to the FDIC by the administrative bar date of December 30, 2008. See ECF No. 7-4 (FDIC Website Notice); Grieser Decl., ¶ 7. It is uncontested that Plaintiff did not comply with this deadline. Id., ¶ 8; Compl., ¶ 6. Although Caires did end up submitting an administrative claim to the FDIC, he did not do so until October 17, 2016. See Proof of Claim, ¶ 1.20.

On March 3, 2009, Caires received a notice of default – on WaMu letterhead – regarding his failure to comply with the terms of his loan agreement. See Compl., Exh. G (Notice of Default and Renegotiation Agreement). But, on May 5, 2009, he apparently negotiated and signed a loan-modification agreement with JPMC that extended his deadline to comply to September 1, 2009. Id. Notably, the agreement specifically recites that JPMC acquired Caires's loan from WaMu through the 2008 P&A agreement with the FDIC. Id. Caires was, nonetheless,

2

seemingly unable to satisfy this modified loan agreement, as he sued JPMC in Connecticut state court on December 3, 2009. See Caires v. JP Morgan Chase Bank, 745 F. Supp. 2d 40, 42 (D. Conn. 2010) (describing original complaint).

If Plaintiff has not successfully vindicated his claims, he has surely had his day in court. His first suit – against JPMC in the Superior Court of Connecticut – alleged claims for fraud in the inducement, equitable estoppel from foreclosure, and violation of the Connecticut Unfair Trade Practices Act. Id. JPMC removed the complaint to the U.S. District Court for the District of Connecticut. Id. at 43-44. After several rounds of motions and a counterclaim by JPMC seeking to foreclose on Plaintiff's property, the court ultimately dismissed all of Caires's suit and remanded the counterclaim to state court. See ECF No. 7 (Def. Motion to Dismiss) at 7. Notably, when Caires subsequently sought to dismiss JPMC's foreclosure counterclaim by alleging that his loan had never been transferred from WaMu to JPMC through the P&A Agreement, the court found that JPMC "had established that [JPMC] or its duly authorized agents had possession of the [2007 WaMu note]." Caires v. JP Morgan Chase Bank, N.A., 2017 WL 2541858, at *2 (Conn. Super. Ct. Apr. 5, 2017). That suit is ongoing.

While simultaneously litigating that state action, Caires sued the FDIC in the Southern District of New York on April 8, 2016. See Compl., ¶ 1. In an attempt to clarify whether JPMC had actually purchased his loan from WaMu, Plaintiff sought a declaration from the court as to whether WaMu had his loan on its books or records, or as part of its assets and liabilities, at the time the FDIC was appointed as the Bank's Receiver on September 25, 2008. Caires v. FDIC, 2017 WL 1393735, at *1 (S.D.N.Y. Apr. 18, 2017). In response to a motion to dismiss filed by the FDIC, that federal court found that it lacked subject-matter jurisdiction over Caires's claims because he had failed to exhaust the administrative-claims process mandated by the Financial

Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (1989). Id. at *4. The court further held that even if Caires had exhausted that claims process, it would lack subject-matter jurisdiction, as § 1821(d)(6)(A) of FIRREA limits post-exhaustion review to the District Court for the District of Columbia and the federal court where WaMu's principal place of business was located – namely, the District Court for the Western District of Washington. Id. at *5.

This brings the Court to the present case. Presumably under the impression that the dispositive weaknesses of his SDNY suit were his failure to file an administrative FIRREA claim and his improper choice of venue, Plaintiff resolved to address both issues. He first filed a claim with the FDIC on October 17, 2016. See Proof of Claim. When this claim was summarily rejected on March 23, 2017, for lack of timeliness, see ECF No. 7-17 (FDIC Rejection Notice), Caires followed with this *pro se* Complaint on May 22, 2017. Although that pleading is somewhat difficult to parse, his claims appear to belong in three separate buckets: (1) claims seeking a declaration as to whether WaMu did or did not have his loan on its books or records, or as part of its assets and liabilities, on September 25, 2008, see Compl., ¶ 51; (2) claims seeking damages for misrepresentation, fraud, and "losses of millions of dollars" to his property, id., ¶ 12, the FDIC "having taken part i[n] what seems like a scheme," id., ¶ 33, and acting with "post-closing willful blindness to the malicious prosecution by [JPMC] against the Plaintiff," id., ¶ 36; and (3) claims for violations of "the Plaintiff[']s right under the 14th amendment." Id., ¶¶ 43, 48.

The FDIC has moved to dismiss, and Caires, now represented by counsel, opposes.

## II.     Legal Standard

Defendant's Motion invokes the legal standards for dismissal under Rules 12(b)(1) and 12(b)(6). When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must

4

demonstrate that the Court indeed has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)) (alteration in original). In policing its jurisdictional borders, the Court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The Court need not rely "on the complaint standing alone," however, but may also look to undisputed facts in the record or resolve disputed ones. See Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992).

Rule 12(b)(6), conversely, provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in the plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). Although the notice-pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. In evaluating the sufficiency of a plaintiff's complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III. Analysis

In seeking dismissal here, the FDIC asserts that all of Caires's causes of action are deficient either jurisdictionally or on the merits. The Court will first address the declaratory-judgment claims, as these are most clearly articulated by Plaintiff and most thoroughly rebutted by Defendant. It will then separately address his assorted tort claims and his Fourteenth Amendment allegations.

#### A. FIRREA Jurisdictional Bar

The FDIC relies on FIRREA's jurisdictional bar in contending that Plaintiff's declaratory-judgment claims cannot proceed. To put it simply, FIRREA establishes an administrative-claims process related to institutions like WaMu that have gone into receivership, and it bars judicial review of claims absent exhaustion of this process. Plaintiff's failure to file a timely administrative claim – and thus exhaust the statutorily required process – is fatal.

6

Congress enacted FIRREA "to enable the . . . expeditious[] wind up [of] the affairs of literally hundreds of failed financial institutions throughout the country," Freeman v. FDIC, 56 F.3d 1394, 1398 (D.C. Cir. 1995), by "creat[ing] an administrative claims process for banks in receivership with the FDIC." Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1141 (D.C. Cir. 2011) (citing 12 U.S.C. § 1821(d)(3)–(13)). To streamline and centralize this claims process, 12 U.S.C. § 1821(d)(13)(D) specifically provides a "broadly worded limitation on judicial review of causes of action that have not first been pursued in the administrative review process." Westberg v. FDIC, 741 F.3d 1301, 1305 (D.C. Cir. 2014) (citing Am. Nat'l Ins. Co., 642 F.3d at 1141). It provides in relevant part:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

The only avenue of review "otherwise provided" comes in § 1821(d)(6), which empowers a claimant to bring an action in court after the FDIC has disallowed a claim on its merits, but not if he fails to file a timely administrative claim. The D.C. Circuit has thus "described § 1821(d)(6) and § 1821(d)(13)(D) as setting forth a 'standard exhaustion requirement.'" Am. Nat'l Ins. Co., 642 F.3d at 1141 (quoting Auction Co. of Am. v. FDIC, 141 F.3d 1198, 1200 (D.C. Cir. 1998)). In other words, "Section 1821(d)(13)(D) . . . acts as a jurisdictional bar to claims or actions by parties who have not exhausted their § 1821(d) administrative remedies." Id.

The FDIC argues that because Plaintiff did not present his claims for declaratory relief through the administrative process, he cannot do so here. As quoted above, the exhaustion requirement has two prongs, (i) and (ii). Caires argues that (ii) does not apply to his claims, as they do not "relate to an act or omission of the failed bank." ECF No. 13 (Pl. Opp. to MTD) at 5. This may be true, but it is beside the point because (i) <u>does</u> apply to his claims. That first prong bars "any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver." <u>Westberg</u>, 741 F.3d at 1305 (quoting 12 U.S.C. §1821(d)(13)(D)(i)) (alteration in original). The language, "seeking a determination of rights," "naturally describes a declaratory judgment action." <u>Id.</u> Even if that were not the case, "claim" as used in subsections (i) and (ii) has been held in this Circuit to include declaratory relief. <u>Id.</u> (finding that "claim" encompasses "demands that are resolvable through the administrative process set out by FIRREA" including "declaratory relief"). As a result, subsection (i) requires exhaustion of Plaintiff's claims for declaratory relief before he may present them here.

WaMu was declared insolvent and the FDIC was appointed as its Receiver on September 25, 2008. <u>See</u> Grieser Decl., ¶ 3. In compliance with 12 U.S.C. § 1821(d)(3)(B), the FDIC left the administrative-claims window open for over 90 days, setting the deadline to file any claim associated with WaMu as December 30, 2008. <u>Id.</u>, ¶ 6. Caires thus had to file his claim through FIRREA's administrative process within this window to be able to proceed here. It is undisputed that he did not do so. The Court therefore lacks jurisdiction to hear his claims for declaratory relief. This is precisely what Judge John Koetl found in Plaintiff's SDNY action. <u>Caires</u>, 2017 WL 1393735 at *4 ("It is plain that the plaintiff has not exhausted the mandatory claims process

8

under the FIRREA . . . [and] [t]his Court accordingly does not have jurisdiction over the plaintiff's claims.").

    B.  FTCA Jurisdictional Bar

In addition to declaratory relief, Caires also seeks damages from the FDIC. See Compl., ¶ 51(D). As outlined above, FIRREA's jurisdictional bar blocks any recovery related to acts by the FDIC as Receiver. To the extent he is pleading some other tort, such claims are barred by the requirements of the Federal Tort Claims Act. The FTCA provides the exclusive remedy for tort claims against federal agencies. See 28 U.S.C. § 2679(a) ("[T]he remedies provided by this title in such cases shall be exclusive."); Jones v. United States, 949 F. Supp. 2d 50, 53 (D.D.C. 2013) (The FTCA "is the only possible basis for jurisdiction" where "a plaintiff seeks monetary damages against a federal agency for torts committed by federal employees . . . "). Only the United States (as opposed to the FDIC) may be named as a defendant in an FTCA action. As the Supreme Court has explained, "[I]f a suit is 'cognizable' under § 1346(b) of the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name.'" FDIC v. Meyer, 510 U.S. 471, 476 (1994) (citation omitted). This failure alone would require dismissal.

Even if Plaintiff had named the United States, his suit would still be barred from federal court for three reasons: (1) he did not exhaust the FTCA's administrative requirements, (2) his claims are barred by the FTCA's statute of limitations, and (3) his claims arising out of any alleged misrepresentations are barred by sovereign immunity. First, under 28 U.S.C. § 2675(a), "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." Specifically, a plaintiff must first file with the agency a

9

"written notification of [the] incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property." 28 C.F.R. 14.2(a). In addition to not complying with FIRREA's administrative requirements, Caires has never contended that he presented a damages claim to the FDIC as required by the FTCA. His claims are thus unexhausted. Second, they are also barred by the FTCA's statute of limitations. See 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues"). In other words, even if his Notice of Claim could be seen as FTCA exhaustion, it is untimely. Finally, to the extent Plaintiff's claims sound in misrepresentation and fraud, they are barred by sovereign immunity, which the Government has not waived for this category of claims. See United States v. Neustadt, 366 U.S. 696, 700-01 (1961) ("claims arising out of negligent, as well as willful, misrepresentation" are "exclude[d] [from] recovery under the Federal Tort Claims Act"). Dismissal of any tort cause of action is thus appropriate.

    C. Fourteenth Amendment Claims

In his Complaint, Caires also asserts that his rights under the Fourteenth Amendment were somehow violated, but he does not articulate what specific rights he is referring to, how they may have been violated, by which officials, or what type of relief he is seeking. See Compl., ¶¶ 43, 48. Although he is correct that the Administrative Procedure Act generally authorizes suits "seeking relief other than money damages" against federal agencies, see Opp. at 9; 5 U.S.C. § 702, "actions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment." Dist. of Columbia v. Carter, 409 U.S. 418, 424 (1973). Plaintiff's bare allegations, moreover, fail to meet the basic federal-pleading requirements. See Fed. R. Civ. Proc. 8(a). Although pleadings by *pro se* plaintiffs are held "to less stringent

standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), a complaint must at least provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 662. Caires has not overcome that minimal hurdle here.

### IV. Conclusion

For the foregoing reasons the Court will grant Defendant's Motion to Dismiss. A separate Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: February 9, 2018